**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| **ABOULFAZL BAYATAFSHAR** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **ARINC, INCORPORATED** | ) | **Case No. 1:11-CV-00450-RC/JMF** |
| **and** | ) | **Jury Trial Demand** |
| **PETER KAPUTSOS,** | ) | |
| **Defendants.** | ) | |

## SECOND AMENDED COMPLAINT

Comes now the Plaintiff, Aboulfazl Bayatafshar, by and through counsel, David A. Branch and the Law Office of David A. Branch and Associates, PLLC, and files this Second Amended Complaint against Defendants ARINC, Incorporated ("ARINC") and Peter Kaputsos and for his complaint states as follows.

### Jurisdiction and Venue

1. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Mr. Bayatafshar's claims occurred in this judicial district and Defendants may be found in this judicial district.

### Parties

3. The Plaintiff, Mr. Aboulfazl Bayatafshar, worked as an independent contractor for the Washington Metropolitan Area Transit Authority ("WMATA") from 1999 until 2003. In 2003,

he became a full-time employee of WMATA as an engineer with the Infrastructure Renewal Program Group. At all times relevant to this Complaint, Mr. Bayatafshar was a union member.

4. Defendant ARINC, Incorporated, ("ARINC") is owned by the Carlyle Group and is a private corporation formed in Delaware with its principle office located in Annapolis, Maryland. ARINC provides transport communications and systems engineering solutions for aviation, airports, defense, government, healthcare, networks, security and transportation. ARINC has significant business contacts in the District of Columbia, including contracts with WMATA.

5. Defendant Peter Kaputsos is an employee of Defendant ARINC, Incorporated, ("ARINC") working with the Washington Metropolitan Area Transit Authority ("WMATA") on a subcontract through Ramex, Corporation.

**Factual Allegations**

6. In 1999, Plaintiff began working for Raytheon Company as an independent contractor providing engineering consulting services for WMATA.

7. In August 2003, Plaintiff obtained a permanent position with WMATA as Construction Engineer in WMATA's Infrastructure Renewal Program Group. In this position, Plaintiff consistently received performance ratings of "Exceeds Expectations" and "Outstanding."

8. In 2003, Plaintiff became the Construction Engineer for the WMATA rehabilitation communication projects including the Integrated Intercommunications System ("Intercom") and the Carrier Transportation and Fiber Optic System (CTS & FOS). As such, he was responsible for formulating all technical and budgetary reviews on the project, planning and coordination of all contract activities. He also worked closely with contractors, including employees of Defendant ARINC, to resolve serious project issues. Defendant Peter Kaputsos was the Senior Project Manager on the Intercom Project.

9. From 2003 to 2007 Defendant Kaputsos continually harassed and threatened the Plaintiff. On January 30, 2007, Kaputsos challenged Mr. Bayatafshar to a physical altercation. Mr. Kaputsos once told Mr. Bayatfshar that Mr. Kaputsos would “crush and destroy” Mr. Bayatafshar if he would not comply with Mr. Kaputsos’ decisions. Following several complaints to Mr. Sarj Akhund, Mr. Bayatfshar’s first line supervisor, regarding Kaputsos’ behavior, Mr. Bayatafshar reported Kaputsos to his second-line supervisor, Beck Pak, in April 2006. When no action was taken, Mr. Bayatafshar met with Director David Couch on January 24, 2007 regarding the behavior of Mr. Kaputsos.

10. The contractor and subcontractors were required to report to Mr. Bayatafshar on a continuous basis regarding the project progress and field matters. Mr. Bayatfshar’s office was in charge of contract management and was responsible for planning all project activities. Mr. Bayatafshar represented WMATA’s contract management office and all field activities were coordinated through him.

11. In 2005 and 2006, Mr. Bayatafshar was removed from email correspondence and meeting lists for several of the projects in which he was directly involved. Mr. Bayatfshar’s job duties were eliminated. He complained of this to Mr. Akhund.

12. In 2006, Mr. Bayatafshar was denied a request to participate in the Comprehensive Radio Communications Systems Project and denied a request for a promotion to Assistant Manager.

13. On February 2, 2007 Mr. Pak informed Mr. Bayatafshar that Mr. Bayatafshar would no longer have contact with ARINC’s contractors or sub-contractors. This resulted in the elimination many of the Mr. Bayatfshar’s job duties and damaged Mr. Bayatafshar’s professional reputation and his ability to perform his remaining duties. Mr. Pak then told Mr. Bayatafshar to “forgive,” Mr. Kaputsos for the harassment, and asked if Mr. Bayatafshar wanted to quit.

14. On February 3, 2007, Mr. Bayatafshar took sick leave to seek medical care for the stress-related illnesses he developed as a result of the harassment. Mr. Bayatfshar has now been diagnosed with a permanent stress related disability. Mr. Bayatafshar did not returned to work after this time due to the physical and mental strain caused by the harassment. Mr. Bayatafshar's last date of employment with WMATA was September 28, 2010.

15. In January 2008, Mr. Bayatafshar filed a worker's compensation claim.

16. In June 2010, during the discovery process for his Worker's Compensation claim, WMATA provided Mr. Bayatafshar with documents and emails that showed Mr. Kaputsos made false statements about Mr. Bayatafshar to Mr. Bayatafshar's supervisors. These emails include, but are not limited to:

    a. On August 31, 2005, Mr. Kaputsos emailed Ramex employee Ashook Ramsaran asking that he communicate to Mr. Akhund that Mr. Bayatafshar had "sent about 50 emails in the last 2 days" and suggest that his emails be screened. Mr. Bayatafshar did not send Mr. Kaputsos about fifty emails in this time frame. Mr. Kaputsos stated that "I guess he is the project manager….If this is true, then we will continue to have problems because he continues to make demands that are in direct conflict with those agreed and recorded in meeting minutes numerous times." At no point did Mr. Bayatafshar make demands that were in direct conflict with previously agreed upon terms. Mr. Kaputsos also said Mr. Bayatafshar is "not to be trusted."

    b. On September 15, 2005, Mr. Kaputsos stated in an email to Mr. Akhund that Mr. Bayatafshar "continues to act on his own behalf, ignoring protocol and not adhering to anything that was previously agreed upon." Mr. Kaputsos stated that a WMATA inspector, Doug Page, applied for a transfer because of Mr. Bayatafshar. However, Mr.

Bayatafshar had trained Mr. Page, and they had a good professional relationship. At no point during his employment with WMATA did Mr. Bayatafshar deviate from protocol or prior agreements between WMATA and ARINC. Mr. Kaputsos requested "intervention" by WMATA against Mr. Bayatafshar.

c. On September 19, 2005, Mr. Kaputsos stated in an email to Mr. Akhund that Mr. Bayatafshar could not be "objective and fair" and that he "continues to pursue the same course as previously." Mr. Kaputsos again requested intervention by WMATA against Mr. Bayatafshar.

d. On September 20, 2005, Mr. Kaputsos stated in an email Mr. Ramsaran that Mr. Bayatafshar was not "capable of being objective and fair" and that his work product "make (sic) no sense." Mr. Kaputsos stated that "[e]nough is enough" and that he would "escalate if necessary."

e. On October 5, 2005, Mr. Kaputsos stated in an email to Mr. Akhund that Mr. Bayatafshar is "causing major problems on multiple projects. It's known inside of WMATA and outside." Mr. Bayatafshar has no knowledge of any major problems on any major projects and denies that any problems are attributable to him. Mr. Kaputsos also stated that Mr. Bayatafshar is "not capable of carrying out project manager responsibilities" and that his "inability to bully and impose his will even when he is clearly wrong has led to contention throughout the project." Mr. Bayatafshar denies that he attempted to bully or impose his will or made any unwarranted or inaccurate demands on projects. Mr. Kaputsos stated that "this needs to be confronted and addressed."

f. On March 10, 2006, Mr. Kaputsos stated in an email to Mr. Akhund that he was "flabbergasted" that Mr. Bayatafshar made a comment in a meeting and later retracted it.

Mr. Kaputsos stated that Mr. Bayatafshar has "destroyed any good will in regard to this job" and that Mr. Bayatafshar ""descents (sic) continuously for his own personal reasons over trivial matters." Mr. Bayatafshar denies that he made any objections based on personal reasons or that were not integral to the project.

17. As a result of these emails, WMATA removed all of Mr. Bayatfshar's significant job duties.

18. Mr. Bayatafshar had no knowledge of the false statements made by Mr. Kaputsos until June 2010. He was unaware of the ongoing communication between his supervisors and Mr. Kaputsos.

19. In June 2010, Mr. Bayatfshar learned that Mr. Kaputsos influenced Mr. Pak's view of Mr. Bayatafshar to the point that Mr. Pak stated to the WMATA's civil rights organization that Mr. Bayatfshar could be put in jail for his improper conduct regarding the contract.

20. He also learned at that time that Mr. Kaputsos influenced Mr. Akhund's opinion to such an extent that Mr. Akhund kept Mr. Bayatfshar away from the public announcement and close circuit TV projects.

**Count I**
**Tortious Interference**

21. Plaintiff realleges and incorporates by reference all of the allegations in the paragraphs above, as if fully stated herein.

22. Under District of Columbia common law, tortious interference occurs when a contract exists, a party has knowledge of the contract's existence and intentionally procures a breach of that contract causing damages as a result of the breach. In lieu of proving a contract, a plaintiff may satisfy the elements of the tort of interference by alleging a prospective advantageous business transaction.

23. Mr. Bayatafshar had an employment contract with WMATA and was a union member with rights under a collective bargaining agreement. Mr. Bayatafshar also had a prospective advantageous business transaction with WMATA in that he anticipated continued employment.

24. At all times the Defendants were aware of the employment agreement and/or prospective business transaction between Mr. Bayatafshar and WMATA.

25. WMATA removed Mr. Bayatfshar's duties and constructively terminated him from his position, based on the false accusations made against Mr. Bayatafshar by the Defendants.

26. At all times Defendant Kaputsos was an agent of Defendant ARINC, and Defendant ARINC was aware or should have been aware of Mr. Kaputsos' actions.

27. Defendant Kaputsos intentionally and maliciously interfered with Mr. Bayatfshar's employment and/or prospective business transactions. In emails to Mr. Bayatfshar's supervisors, Mr. Kaputsos claimed that Mr. Bayatafshar was not competent; that he made demands which were not in the contract; that employees would not work with him; that he was creating major problems on multiple projects; and that he was not capable of carrying out project management responsibilities.

28. As a result of the interference with his employment, Mr. Bayatafshar's job duties were removed by WMATA and he suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his professional personal reputation.

29. Pursuant to D.C. Code §12-301(8), the statute of limitations for bringing a claim for tortious interference with contract is three years. Mr. Bayatfshar's claim falls within this statute of limitations because he learned of the interference when he was engaged in discovery for his worker's compensation case in June 2010, and WMATA produced confidential emails between Defendants and Mr. Bayatfshar's supervisors.

WHEREFORE, the Plaintiff prays this Court enter an order against the Defendants granting:

A. Declaratory judgment for the Plaintiff on all counts;
B. Compensatory, incidental and consequential damages to the Plaintiff for economic loss and mental and physical distress;
C. Punitive damages against Defendants;
D. Reasonable attorney's fees and costs of this action; and
E. Any such further relief the court deems equitable under the circumstances.

**Count II**
**Defamation**

30. Plaintiff realleges and incorporated by reference all of the allegations in the paragraphs above, as if fully stated herein.

31. Under D.C. common law, defamation occurs where the defendant made a false and defamatory statement concerning the plaintiff; the defendant published that statement without privilege to a third party; the defendant's fault in publishing the statement amounted to at least negligence; and either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

32. A defamatory statement is one that tends to injure the plaintiff in trade, profession or community standing, or lower the plaintiff's estimation in the community.

33. Mr. Kaputsos maliciously made false statements regarding the Plaintiff, as detailed above, including but not limited to claims that Mr. Bayatafshar was not competent; that he made demands which were not in the contract; that employees would not work with him; that he was creating major problems on multiple projects; and that he was not capable of carrying out project management responsibilities. These false claims were injurious to the Plaintiff's professional

and personal reputation, and were made to Plaintiff's supervisors, as described in full detail above.

34. Plaintiff has reason to believe, based on the communications detailed herein, that other statements may have been made by Mr. Kaputsos constituting defamation under District of Columbia law, which may be revealed in the course of discovery.

35. Pursuant to D.C. Code § 12-301(4), the Plaintiff must file an action for defamation within one year of the harm. The Plaintiff did not discover the false statements made by Mr. Kaputsos until June 2010 during the discovery process for his worker's compensation case.

WHEREFORE, the Plaintiff prays this Court enter an order against the Defendants granting:

A. Declaratory judgment for the Plaintiff on all counts;
B. Compensatory, incidental and consequential damages to the Plaintiff for economic loss and mental and physical distress;
C. Punitive damages against Defendants;
D. Reasonable attorney's fees and costs of this action; and
E. Any such further relief the court deems equitable under the circumstances.

Respectfully Submitted,

*<u>/s/ David A. Branch</u>*
David A. Branch, #438764
Law Office of David A. Branch and Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
202.785.2805 ph.
ablaw@erols.com

**<u>Jury Trial Demand</u>**

Plaintiff demands a jury trial on all counts

**Certificate of Service**

I hereby certify that on this 3rd day of October, 2013, I caused a copy of the foregoing Second Amended Complaint to be served electronically on counsel for Defendants listed below.

Stephen A. Horvath
Bancroft, McGavin, Horvath & Judkins, P.C.
3920 University Drive
Fairfax, VA 22030
(703) 385-1000 phone
(703) 385-1555 fax
shorvath@tbmhjlaw.com

          */s/ David A. Branch*
          David A. Branch